UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    :
                            :
                            :
v.                          :     CRIMINAL NO: 04-10063-RCL
                            :
IVAN RODRIGUEZ

**DEFENDANT'S SENTENCING MEMORANDUM**

Ivan Rodriguez appeared before Your Honor on March 22, 2005, and pleaded guilty to 6 counts (1,2, 4-7) of a 7-count Indictment that charges him and his brother, Nestor Rodriguez, with Conspiracy and Distribution of Heroin. An eighth forfeiture count requires the brothers to forfeit any and all property obtained from or used to commit the crime. The charges are in violation of Title 21 U.S.C. §846, §841(a)(1), and §853. The total amount of heroin accountable to Ivan, including relevant conduct, amounted to 32.95 grams (little more than an ounce) and thus the penalty for each count was 0 – 20 years. The government has filed a motion under Title 21 U.S.C. §851 stating that Ivan had committed the instant offense after sustaining at least one prior conviction for distribution of controlled substances. Consequently, the penalty for Ivan's offense increased to 0 – 30 years.

Both Ivan and his brother Nestor were deemed to be career offenders by virtue of at least two qualifying prior convictions. Thus, a result of the government's filing of the §851 motion, increased the guideline range to 188 – 235 months. (Had the government exercised its discretion and not filed the 851 motion, the defendant's guideline range as

1

career offender would have been 151 – 188 months.) Your Honor re-sentenced the defendant's brother, Nestor, on a Booker remand to 188 months.

## Guideline Calculations

In the pre-sentence Report (PSR), the Probation Office has correctly determined that, not withstanding the career offender provision, the Total Offense Level for the defendant would be 15, Criminal History Category IV.   As appropriately noted in the PSR, the defendant has three predicate convictions that qualify him under the career offender provision. Ivan's offense level thus is, under the guidelines, 188 -235 months. The defendant does not dispute the calculation.  Nonetheless, the court has authority to depart from a career offender provision if one or both of the two factors discussed at §4B1.1 are present,  i.e.,  1) if reliable information indicates that the criminal history category does not reflect the seriousness of the defendant's past criminal conduct  2) **OR** the likelihood that the defendant will commit future crimes, the court may consider a departure. See *§4A1.3.*  Most circuits have held that downward departures under §4A1.3 may be considered for career offenders if that category over-represents the seriousness of defendant's criminal history or the likelihood that defendant will commit future crimes. *See U.S. v Lindia,* 82 F3d 1154, 1165 (1st. Cir.1996); *U.S. v Webb,* 139 F.3d 1390, 1395(11th Cir.1998); *U.S. v Shoupe,* 35 F.3d 835, 838-39(3rd.Cit. 1994); *U.S. v Beckham,* 968 F.2d 47, 54-55(D.C. Cir. 1992); *U.S. v Adkins,* 937 F.2d 947,952(4$^h$ Cir. 1991).

Ivan cannot refute the seriousness of his past criminal history.  But it is the second prong of the departure analysis that the defendant's believes is applicable in his case. While a defendant's extensive criminal past can be relevant to both concerns, the sentencing court should keep these considerations separate. *See, e.g., United States v*

*Madrid,* 946 F.2d 142, 143 (1st. Cir. 1991).  The policy statement regarding the departure does not require that both prongs of the analysis apply before the departure can be made. *U.S. v. Lawrence*, 916 F.2d 553 (9th Cir. 1990). (Downward departure from the career offender guideline from 12 years to 30 months for this 52-year old defendant on the ground that the likelihood of recidivism was low, and the defendant was not violent or antisocial.)

    The defendant wishes the court to consider that although the career offender provision technically applies, there are many factors that provide a context for the criminal history which do not necessarily foretell Ivan's ability to remain crime free.  It should be kept in mind that, notwithstanding the government's sentencing memo,  Ivan has 9  criminal history points.[1]

To be sure, the defendant does not seek to excuse his past criminal behavior, he wishes the court to consider:   First, the home in which he was reared was drug infested.  Ivan's father had been dealing in heroin for many years and taught his sons the business and the culture of drug addiction.  Ivan has been addicted to heroin since he was 18 years old.  Given the milieu in which the defendant was reared, it is unsurprising that as a teenager and young adult he had little respect for authority.  This is the framework for the defendant's criminal life.  Ivan was not in the trafficking business to make large sums of money.  He committed his crimes largely to support his own heroin use.

---

[1] The government states the defendant has 79 entries on his record.  This indiscriminate assertion has no basis for computing the criminal history score.  The Sentencing Commission has researched all aspects of its Criminal History Category and determined that each Category fairly represents the factors the SRA required in determining offender characteristics.  Moreover, the government's sentencing memorandum exaggerates the amount of time the defendant served on each qualifying predicate.  The PSR shows that on the conspiracy to distribute cocaine (¶50), defendant served a total of 3 yrs, 7 months, not 5 years.  On the Poss. w/int to distribute heroin (¶54),  the PSR shows the defendant served 3 yrs, not 4 years.  While these are perhaps small details, the net effect is to present Ivan in the worst possible light by exaggerating the facts.

3

Second, the defendant has made several failed attempts at remaining drug free. He understands that his legal problems and health condition are a result of his drug use. He admits that he has been able to remain drug free for periods of his life due to court-ordered supervision and times of incarceration. What he has not had, is an extended period of drug treatment. Interestingly, prior to the resumption of his latest drug use which led to the instant offense, Ivan was arrest-free for seven years. Presently, he faces a long period of incarceration and a willingness to participate in the Bureau of Prisons' drug treatment program. Importantly, he has become cognizant of the fact that if he does not kick the drug habit, it likely will cost his life. His present medical condition may cost him his life regardless of his ability to remain abstinent.

Third, it is the combination of Ivan's effort at rehabilitation, his age[2], and a desire to keep his HIV under control that bodes wells for the future and his ability not to recidivate. The more recent study conducted by the Sentencing Commission finds that age is an important predictor of recidivism. Nearly 46 years old, Ivan has most likely reached the end of his criminal life. The defendant submits that all things considered, the Career Offender category overstates the likelihood that he will recidivate.

The defendant requests that the court depart down from the Career Offender provision to CHC V, level 27, guideline range 120 – 150 months. Both CHC V and

---

[2] Recidivism rates decline relatively consistently as age increases. Generally, the younger the offender, the more likely the offender recidivates….Among all offenders under age 21, the recidivism rate is 35.5 percent, while offenders over age 50 have a recidivism rate of 9.5 percent. "Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines" United States Sentencing Commission, May 2004. pg 12.
A follow-up study comparing the Salient Factor Score with Criminal History Score as measures for recidivism, the Commission found "In their current formulations, the SFS is a statistically better recidivism risk prediction instrument than is the CHC. The results suggest that , in large part, the greater predictive power of the SFS is due to its use of offender age as a predictive factor." "A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score." Release 3, January 4, 2005, pg 15.

4

Level 27 are higher levels than the non-career offender levels assigned to the defendant, i.e., CHC IV, Level 15.  Such a departure will serve to moderate the low end of his 15-year career offender category, yet still serve as adequate punishment.

It is now settled law pursuant to *United States v Booker,* 125 S.Ct. 738 (2005), that when imposing sentence the Court must consider the Sentencing Guidelines and Policy Statements.   *Booker* requires that in addition to considering the final advisory guideline calculation, the sentencing court is mandated to consider the statutory sentencing factors at 18 U.S.C. §3553(a) among which are (a)(1), the nature and circumstances of the offense and the history and characteristics of the defendant.  As the circumstances of the offense and the defendant's personal history are intricately intertwined, we shall deal with them together.

## Nature and Circumstances of the Offense and

## Ivan Rodriguez' Personal History and Characteristics

The investigation into Ivan and Nestor Rodriguez' drug dealing revealed two brothers involved in small quantity-street-level heroin distribution.  The total amount of heroin involved in all six counts as well as the relevant conduct totals little more than an ounce of heroin.  Ivan's drug dealing, he admits, was to pay for his heroin usage which he resumed after being arrest-free for seven years.

As vividly recounted in the pre-sentence report, the defendant was born in Ponce, Puerto Rico and reared  from the time he was about five years old in the Paul Bunker Projects in Taunton, MA, a neighborhood rife with drugs and violence.  Unfortunately, his home life mirrored the environment in which he lived; it too was chaotic and dysfunctional.  Ivan's father was an alcoholic who also became a heroin addict and dealt

heroin out of the family home. The father recently died early in 2005. In spite of the family's substance abuse problems, the defendant's mother stayed in the home and presently remains supportive of Ivan. Ivan's 27 year-old daughter, Kris, presently lives with Ivan's mother and remains supportive of her father.

The defendant's wife, Juanita Morales, resides with the couple's 5-year-old adopted son, Jadakis Santell, in Taunton, Ma. Ms. Morales was interviewed by Probation and presented an affection and concern for Ivan, whom she described as a "great husband" and a "great father." She will remain supportive of the defendant as long as she is able.

The instant offense has sobered Ivan in a way that will endure for the rest of his life. He realizes that he will be separated from the family that he dearly loves for a period much longer than he has ever been separated before.

## Meeting the Purposes of this Sentence

As Ivan Rodriguez stands now before the Court, the Court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in the statute at 18 U.S.C.§3553(a)(2) i.e., (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. (B) to afford adequate deterrence to criminal conduct. (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

Clearly, Ivan's offense is a serious one that deserves a sentence that provides some form of punishment. Absent a departure, the advisory guideline provides for a sentence within the range of 188 – 245 months. A 15-year sentence is more than

necessary to meet the ends of justice and a harsh sentence for such a small amount of drugs. A ten-year sentence will serve as no less a deterrent than the 15-year sentence.[3]

A ten-year sentence will serve the purpose of ensuring the defendant receives long-term drug treatment and medical treatment for his positive HIV condition and the collateral physical ailments that he presently encounters.

Finally, the sentence should not create unwarranted disparity among defendants with similar records who have been found guilty of similar conduct. In this regard, the government chooses to compare Ivan and his brother Nestor as indistinguishable for sentencing purposes. See *gov't sentencing memo.* There are, several factors that distinguish these two brothers convicted of the same crime with the same resultant guideline calculation.

First, Nestor had amassed 14 criminal history point which qualified him as a CHC VI prior to the addition of the Career Offender Category. Ivan has 9 points, for a CHC IV. Nester has four qualifying predicates while Ivan has three. Nestor is younger, yet his history is more extensive as well as more violent. Second, Ivan suffers from a life-threatening disease which Nestor seems to have escaped. Third, Ivan has made attempts at remaining drug free, sometimes successful. He is motivated to undergo drug treatment and to remain so for the rest of his life.

The government asserts that the career offender provision was promulgated by the Sentencing Commission pursuant to a clear and specific Congressional policy declaration. While this is certainly true, it also true that the Sentencing Commission

---

[3] Id "Measuring Recidivism" The study shows the relationship between the length of the instant offense prison sentence and recidivism. Recidivism is comparatively low for sentences less than six months, or probation. Recidivism peaks with mid-length sentences, roughly six months to two years. Recidivism drops for the longest sentences. Pg 14.

promulgated an encouraged departure for situations when the defendant's criminal history does not adequately foretell the likelihood that he will recidivate.

Whether or not the Court relies on guideline departure grounds for the criminal history overstating the likelihood he will commit future crimes, or the combination of his efforts at rehabilitating himself and his serious medical condition, or the factors listed at 18 U.S.C. §3553(a), it seems clear that a sentence 15 years in this case is much greater than necessary to meet the ends of justice.

By his attorney:

/s/ C. Samuel Sutter

C. Samuel Sutter
203 Plymouth Avenue
Fall River, Massachusetts 02721
(508) 674-8633